658 F.2d 1249
 POSTSCRIPT ENTERPRISES, INC., Appellant,
v.
Donald H. WHALEY, Clarence T. Hunter, Suzanne Hart, John A.
Schicker, Eugene Camp, Capt. Earl Halveland, Sgt.
Vincent Stehlin, Appellees.
 No. 80-1987.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 16, 1981.
Decided Sept. 14, 1981.
 
 Janet Benshoof, Reproductive Freedom Project, American Civil Liberties Union Foundation, Abigail A. Jones, New York City, Cooperating Atty., American Civil Liberties Union Foundation, for amicus curiae American Civil Liberties Union Foundation and American Civil Liberties Union/Eastern Missouri.
 Thomas A. Connelly, City Counselor, Judith A. Ronzio, Asst. City Counselor, Stephen Kovac, Asst. City Counselor, argued, St. Louis, Mo., for appellees.
 Murry A. Marks, Clayton, Mo., argued, for appellant.
 Before LAY, Chief Judge, STEPHENSON, Circuit Judge, and LARSON,* Senior District Judge.
 STEPHENSON, Circuit Judge.
 
 
 1
 Plaintiff-appellant Postscript Enterprises, Inc. brought action seeking monetary and injunctive relief against the enforcement of a St. Louis municipal ordinance restricting the sale of "any contraceptive or sex-inciting device or contrivance, or any prophylactic rubber goods or prophylactic membranes." The district court[1] granted defendants-appellees' motion for summary judgment and denied appellant's motion for summary judgment, upholding the ordinance against appellant's contention that it was unconstitutional on vagueness, free speech, and right of privacy grounds. Postscript appeals and we now reverse.
 
 I. BACKGROUND
 
 2
 Appellant operates an adult book store in St. Louis, Missouri, and several times between 1977 and 1979 appellant's employees have been arrested for violating Chapter 772, Revised Code of the City of St. Louis. The ordinance prohibits the sale of any contraceptive or sex-inciting device or contrivance, or prophylactic rubber goods or prophylactic membranes, except by registered and licensed physicians, pharmacists, and wholesale druggists or manufacturers.[2]
 
 
 3
 Appellant's lawsuit seeks to enjoin the enforcement of the ordinance and have it declared unconstitutional. Further, it seeks monetary relief under 42 U.S.C. § 1983 for damages allegedly resulting from appellees' actions.
 
 
 4
 The district court determined that appellant had standing to challenge the validity of the ordinance and further concluded the ordinance was a proper exercise of the city's police power and not unconstitutional as enacted or applied. On appeal it is argued that the district court erred in not holding that the ordinance (1) violated a constitutionally protected right of privacy; (2) was unconstitutionally vague in its regulation of "sex-inciting devices or contrivances"; and (3) violated appellant's First Amendment rights.
 
 
 5
 We conclude that chapter 772 violates the right of privacy which an individual has in making decisions regarding contraception. Carey v. Population Services International, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977); Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972). To the extent that the part of the ordinance restricting the sale of "sex-inciting devices or contrivances" is severable from the parts regulating contraceptives and prophylactics, we conclude the phrase "sex-inciting device or contrivance" is unconstitutionally vague. We do not reach appellant's other challenges to the ordinance.
 
 II. ANALYSIS
 A. Standing
 
 6
 We agree with the district court that appellant has standing to challenge the validity of chapter 772. Appellant has standing not only in its individual capacity but also has standing to assert the rights of its present and potential customers. Carey v. Population Services International, supra, 431 U.S. at 683, 97 S.Ct. at 2015; Craig v. Boren, 429 U.S. 190, 192-97, 97 S.Ct. 451, 454-56, 50 L.Ed.2d 397 (1976). Chapter 772, like the statutes in Carey and Craig, inflicts on appellant "injury in fact" that satisfies Article III's case-or-controversy requirement since the legal duties created by the ordinance are addressed directly to vendors such as appellant. It is obliged either to heed the statutory prohibition, thereby incurring a direct economic injury through the constriction of its market, or to disobey the statutory command and suffer legal sanctions. See Carey v. Population Services International, supra, 431 U.S. at 683, 97 S.Ct. at 2015 (quoting Craig v. Boren, supra, 429 U.S. at 194, 97 S.Ct. at 455).
 
 
 7
 The only arrests of appellant's employees have been for the sale or offering for sale of sex-inciting devices. Appellees argue appellant therefore does not have standing to challenge the validity of the contraceptives and prophylactics portions of chapter 772. We disagree. Affidavits filed with the motion for summary judgment in this case state that appellant is offering contraceptives and/or prophylactics for sale. The parties have stipulated that the Vice Division of the St. Louis City Police Department has as one of its functions the enforcement of chapter 772. Appellant is under a realistic threat of arrest and prosecution.
 
 B. Right to Privacy
 
 8
 The validity of chapter 772's prohibition on the sale of contraceptives and prophylactics, except by registered and licensed physicians and pharmacists, is governed by Carey. The district court in this case distinguished Carey:
 
 
 9
 (I)n Carey, the Supreme Court found a New York statute unconstitutional which sought to restrict distribution of contraceptives to persons under sixteen years of age. The ordinance in question here makes no distinction based on either marital status or age. Indeed, Chapter 772 does not restrict by any classification those persons who may wish to purchase or use the articles enumerated in Section 772.010. Chapter 772 only regulates the method of distribution and the professional competency of the distributors of these products. This is a valid exercise of the municipality's police power.
 
 
 10
 Postscript Enterprises, Inc. v. Whaley, 499 F.Supp. 646, 649-50 (E.D.Mo.1980).
 
 
 11
 It is our view that Carey cannot be so limited. The first issue addressed by the Supreme Court in Carey is nearly the precise question we face today: "We consider first the wider restriction on access to contraceptives created by (the statute's) prohibition of the distribution of nonmedical contraceptives to adults except through licensed pharmacists." Carey v. Population Services International, supra, 431 U.S. at 686, 97 S.Ct. at 2016.
 
 
 12
 The Court in Carey noted that one aspect of the "liberty" protected by the Due Process Clause of the Fourteenth Amendment is "a right of personal privacy, or a guarantee of certain areas or zones of privacy." Id. at 684, 97 S.Ct. at 2015 (quoting Roe v. Wade, 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973)). The Court then concluded "(t)hat the constitutionally protected right of privacy extends to an individual's liberty to make choices regarding contraception * * *." Carey v. Population Services International, supra, 431 U.S. at 685, 97 S.Ct. at 2016.
 
 
 13
 The Court in Carey held the right to access of contraceptives was essential to the exercise of this constitutionally protected right and therefore restrictions on access could be upheld only if they serve a compelling state interest. Id. at 688, 97 S.Ct. at 2017.[3]
 
 
 14
 Thus the Supreme Court found no compelling state interest for the provision restricting the sale of contraceptives in Carey. Id. at 690-91, 97 S.Ct. at 2018-19. We do not find any reasons proferred by appellees in the instant case which were not rejected in Carey. The ordinance's restriction on the sale of contraceptives and prophylactics is therefore unconstitutional.
 
 C. Sex-inciting Devices or Contrivances
 
 15
 Appellees argue that even if the restrictions on the sale of contraceptives and prophylactics are invalid, nevertheless they are severable from the restriction on the sale of sex-inciting devices or contrivances. Appellees therefore contend chapter 772 is valid insofar as it prohibits the sale of sex-inciting devices or contrivances except by duly registered and licensed physicians and pharmacists.
 
 
 16
 Appellant argues that the single sentence prohibition in section 772.010 first restricting the sale of contraceptives, then sex-inciting devices or contrivances, and finally prophylactic rubber goods or membranes so closely ties together the items that chapter 772 is not severable and therefore unconstitutional in its entirety. Clearly if the phrase refers only to contraceptives or prophylactics which have "sex-inciting" characteristics,[4] this restriction is invalid for the reasons set forth in Part II B supra.
 
 
 17
 A federal court is without power to remedy defects in an ordinance by giving it constitutionally precise content. Hynes v. Mayor of Oradell, 425 U.S. 610, 622, 96 S.Ct. 1755, 1761, 48 L.Ed.2d 243 (1976). However, we are obliged to favor an interpretation which renders the statute constitutional, The Casbah, Inc. v. Thone, 651 F.2d 551 at 558 (8th Cir. 1981); Turchick v. United States, 561 F.2d 719, 723-24 (8th Cir. 1977). We therefore assume the phrase "sex-inciting device or contrivance" includes items which have no contraceptive or prophylactic characteristics. As so interpreted, an issue raised is whether the entire chapter is defeated because of the invalidity of the provisions restricting the sale of contraceptives and prophylactics.
 
 
 18
 We do not reach the close question of severability.[5] To the extent that the restriction in chapter 772 on the sale of sex-inciting devices or contrivances can stand alone, the ordinance is unconstitutionally vague.
 
 
 19
 The doctrine of vagueness is embodied in the Due Process Clauses of the Fifth and Fourteenth Amendments. Due process incorporates notions of fair notice or warning.[6] Smith v. Goguen, 415 U.S. 566, 572, 94 S.Ct. 1242, 1246, 39 L.Ed.2d 605 (1974). We have recently discussed the standards applied in deciding whether an ordinance is unconstitutionally vague on its face. We stated in Geiger v. City of Eagan, 618 F.2d 26, 28 (8th Cir. 1980):
 
 
 20
 Due process has two requirements: that laws provide notice to the ordinary person of what is prohibited and that they provide standards to law enforcement officials to prevent arbitrary and discriminatory enforcement.
 
 
 21
 Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.
 
 
 22
 Grayned v. City of Rockford, 408 U.S. 104, 108-109, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972) (footnotes omitted).
 
 
 23
 There is concern that lawmaking will be entrusted "to the moment-to-moment judgment of the policeman on his beat." Gregory v. City of Chicago, 394 U.S. 111, 120, 89 S.Ct. 946, 951, 22 L.Ed.2d 134 (1969) (Black, J., concurring).
 
 
 24
 In determining whether an ordinance is impermissibly vague, "courts traditionally have relied on the common usage of statutory language, judicial explanations of its meaning, and previous applications of the statute to the same or similar conduct." Balthazar v. Superior Court, 573 F.2d 698, 700 (1st Cir. 1978).
 
 
 25
 No legislative or administrative definitions have been made of the phrase "sex-inciting device or contrivance." A search of reported decisions of prosecutions under chapter 772[7] does not reveal any interpretation of the phrase by Missouri state courts.[8]
 
 
 26
 It is our view that a restriction on the sale of any "sex-inciting device or contrivance" does not provide appellant with a sufficiently definite standard by which to judge whether a customer is buying a device for a legitimate use or a "sex-inciting" use. For example, appellant states some vibrators it offered for sale were seized by police, while others were not. Assuming that genital vibrators might be sex-inciting devices or contrivances, a problem arises because these items also have non-sex-inciting purposes which have been set forth in FDA regulations at 21 C.F.R. § 884.5960(a) (1980): "A genital vibrator for therapeutic use is an electrically operated device intended and labeled for therapeutic use in the treatment of sexual dysfunction or as an adjunct to Kegel's exercise (tightening of the muscles of the pelvic floor to increase muscle tone)." Thus a purchaser may want to purchase a genital vibrator to increase muscle tone. Appellant has no way to determine from the ordinance whether an item it wishes to offer for sale for this purpose will be considered by the police, judge, or jury to be sex-inciting.
 
 
 27
 "The ordinance further lacks arrest and search standards for enforcement officials. * * * Where definite guidelines for enforcement officials are not present, use of the ordinance to expand arrest opportunities and justify searches magnifies the potential harm from enforcement of the ordinance." Geiger v. City of Eagan, supra, 618 F.2d at 29.
 
 
 28
 We also note the Supreme Court has struck down on vagueness grounds a licensing scheme for films when the standard in the ordinance for classifying a film was whether it was "likely to incite or encourage delinquency or sexual promiscuity." Interstate Circuit, Inc. v. Dallas, 390 U.S. 676, 88 S.Ct. 1298, 20 L.Ed.2d 225 (1968).
 
 
 29
 We conclude a restriction on the sale of sex-inciting devices or contrivances "forbids * * * an act in terms so vague that (persons) of common intelligence must necessarily guess at its meaning and differ as to its application." Conally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). Nor does the phrase provide standards to law enforcement officials to prevent arbitrary and discriminatory enforcement. Geiger v. City of Eagan, supra, 618 F.2d at 28. The restriction on the sale of any "sex-inciting device or contrivance" is unconstitutionally vague.
 
 
 30
 We therefore conclude the ordinance is invalid in its entirety.
 
 
 31
 Reversed.
 
 
 
 *
 The Honorable Earl R. Larson, Senior United States District Judge for the District of Minnesota, sitting by designation
 
 
 [1]
 The Honorable James H. Meredith, Senior United States District Judge for the Eastern District of Missouri. The district court's memorandum is published at 499 F.Supp. 646 (E.D.Mo.1980)
 
 
 [2]
 The ordinance provides:
 
 
 [772]
 PROPHYLACTICS, ETC
 
 
 [772]
 010. Sales prohibited. No person shall sell or offer for sale, or give away any contraceptive or sex-inciting device or contrivance, or any prophylactic rubber goods or prophylactic membranes. (1948, C. 46, s. 15.)
 
 
 [772]
 020. Vending by machines, etc., prohibited. No person shall own or be in charge of any vending machine dispensing any of the articles described in the preceding section, nor shall be in charge of any premises where such vending machine may be maintained or located, nor where any such articles may be displayed or dispensed by any means whatsoever. (1948, C. 46, s. 15.)
 
 
 [772]
 030. Physicians and pharmacists excepted. This Chapter shall not apply to duly registered and licensed physicians, duly registered pharmacists, and wholesale druggists, jobbers or manufacturers who sell to the retail drug trade. (1948, C. 46, s. 15.)
 
 
 [3]
 (T)he same test must be applied to state regulations that burden an individual's right to decide to prevent conception or terminate pregnancy by substantially limiting access to the means of effectuating that decision as is applied to state statutes that prohibit the decision entirely. Both types of regulation "may be justified only by a 'compelling state interest' ... and ... must be narrowly drawn to express only the legitimate state interests at stake." Roe v. Wade, supra, at 155, 93 S.Ct. at 727. See also Eisenstadt v. Baird, 405 U.S., at 463, 92 S.Ct. at 1043 (White, J., concurring in result). This is so not because there is an independent fundamental "right of access to contraceptives," but because such access is essential to exercise of the constitutionally protected right of decision in matters of childbearing that is the underlying foundation of the holdings in Griswold, Eisenstadt v. Baird, and Roe v. Wade
 Limiting the distribution of nonprescription contraceptives to licensed pharmacists clearly imposes a significant burden on the right of the individuals to use contraceptives if they choose to do so. (citation omitted) The burden is, of course, not as great as that under a total ban on distribution. Nevertheless, the restriction of distribution channels to a small fraction of the total number of possible retail outlets renders contraceptive devices considerably less accessible to the public, reduces the opportunity for privacy of selection and purchase, and lessens the possibility of price competition.
 Carey v. Population Services Int'l, 431 U.S. 678, 688-89, 97 S.Ct. 2010, 2017-18, 52 L.Ed.2d 675 (1977) (footnotes omitted).
 
 
 [4]
 The Michigan Court of Appeals, in a case decided before Carey, upheld the validity of an ordinance very similar to that in the instant case, prohibiting the sale of contraceptives, prophylactic rubber goods, or sex-inciting devices or contrivances, in that order. Kalita v. City of Detroit, 57 Mich.App. 696, 226 N.W.2d 699 (Mich.App.1975). That court read the phrase "sex-inciting device or contrivance" in context and apparently limits its meaning to contraceptive products:
 The ordinance with which we are presently concerned is primarily designed to regulate the distribution of contraceptive products and devices in general, and prophylactic rubber goods specifically. In addition to the listed and described items, any "sex inciting device or contrivance" is logically included as a manufactured item, usually made of rubber, which is used by some in connection with sexual activity and which is likely to have a tendency to encourage such activity. The phrase, therefore, derives added certitude from its inclusion among the other products.
 Id. at 702.
 
 
 [5]
 The test of severability is substantially the same whether applied by the federal courts or the Missouri Supreme Court. Compare Planned Parenthood of Missouri v. Danforth, 428 U.S. 52, 83, 96 S.Ct. 2831, 2847, 49 L.Ed.2d 788 (1976) (if the provisions are "inextricably bound together" then they must stand or fall together) and Buckley v. Valeo, 424 U.S. 1, 108, 96 S.Ct. 612, 677, 46 L.Ed.2d 659 (1976) (per curiam) ("Unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law."), with Gramex Corp. v. Von Romer, 603 S.W.2d 521, 526 (Mo.1980) (quoting State v. Hackmann, 275 Mo. 534, 205 S.W. 12, 14 (1918), in which the court stated:
 The test of the right to uphold a law, some portions of which may be invalid, is whether or not in so doing, after separating that which is invalid, a law in all respects complete and susceptible of constitutional enforcement is left, which the Legislature would have enacted if it had known that the exscinded portions were invalid.
 In the instant case the restricted items are listed seriatim in the same sentence of section 772.010. While it appears the major purpose of the section is to restrict the sale of items with a contraceptive or prophylactic purpose, see note 4 supra, and therefore that the phrase "sex-inciting device or contrivance" is dependent upon the other items for its meaning, we cannot state this with certainty. We also have little or no way to determine whether the city government drafters would have intended the restriction on the sale of sex-inciting devices or contrivances to stand alone.
 
 
 [6]
 We assume, without having to decide, that the City of St. Louis may, through a properly drawn ordinance, restrict the sale of items which enable, aid, or encourage private consensual sexual behavior among adults. Whether and to what extent the right of privacy discussed in Part B supra extends to restrictions which "implicate sexual freedoms" or regulate private consensual sexual behavior among adults is a question which the Supreme Court "has not definitely answered." Carey v. Population Services Int'l, supra, 431 U.S. at 688 n.5, 694 n.17, 97 S.Ct. at 2018 n.5, 2021 n.17. But see id. at 718 n.2 (Rehnquist, J., dissenting) (citing Doe v. Commonwealth's Attorney, 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976), summarily aff'g, 403 F.Supp. 1195 (E.D.Va.1975))
 While this court has stated in the context of a prostitution statute that "(w)e do not agree that the right to privacy extends to all sexual practices performed in private including the commercialized sexual activities regulated in this case," J.B.K., Inc. v. Caron, 600 F.2d 710, 711 (8th Cir. 1979), a trend in recent cases has been to expand the right of privacy in this area. See People v. Onofre, 51 N.Y.2d 476, 434 N.Y.S.2d 947 (1980); Commonwealth v. Bonadio, 490 Pa. 91, 415 A.2d 47 (1980). See also State v. Ciuffini, 164 N.J.Super. 145, 395 A.2d 904 (1978); State v. Pilcher, 242 N.W.2d 348 (Iowa 1976). See generally L. Tribe, American Constitutional Law, 941-48 (1978).
 Additionally, appellant's complaint alleges that it is a denial of equal protection to allow a registered pharmacist to sell nonprescription sex-inciting devices, but not appellant. Assuming again that no fundamental right is involved, the classification must rationally relate to a legitimate state interest. Appellant notes that the F.D.A. has begun to regulate the quality for some items in this area, see 21 C.F.R. § 860.1 (1980), and that quality control is not furthered by this limitation. At oral argument appellees offered the regulation of morals as a reason for restricting access, however we are unsure limiting the sale to registered pharmacists furthers this goal. In any event, our conclusion that the ordinance is unconstitutionally vague obviates the necessity of ruling on this question.
 
 
 [7]
 See City of St. Louis v. Matthews, 509 S.W.2d 194 (Mo.App.1974); City of St. Louis v. Richardson, 509 S.W.2d 195 (Mo.App.1974)
 
 
 [8]
 The district court in the instant case did not find the statute to be unconstitutionally vague. It stated:
 The ordinance in this case seeks to regulate the distribution of contraceptive products and prophylactic rubber goods, as well as any "sex-inciting device or contrivance." When read in conjunction with the surrounding language of Section 772.010, the phrase "sex-inciting device or contrivance" is quite explicit. It has been held to mean "a manufactured item, usually made of rubber, which is used by some in connection with sexual activity and which is likely to have a tendency to encourage such activity." Kalita v. City of Detroit, 57 Mich.App. 696, 226 N.W.2d 699, 702 (1975).
 Postscript Enterprises, Inc. v. Whaley, 499 F.Supp. 646, 649 (E.D.Mo.1980).
 As previously stated, see note 4 and accompanying text supra, to accept the district court opinion relying on Kalita v. City of Detroit, supra, would be to limit the phrase to items with a contraceptive purpose and render the phrase an unconstitutional restriction on the sale of contraceptives.